MARC PICKER, ESQ. (SBN 3566)
ANGELA LIGHTNER, ESQ. (SBN 11837)
MARC PICKER, ESQ., LTD.
729 Evans Avenue
Post Office Box 3344
Reno, NV 89505-3344
Telephone: 775/324-4533
Facsimile: 775/324-5444

Attorneys for FAWN PHIBBS

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

| | |
|---|---|
| FAWN PHIBBS,<br><br>        Plaintiff,<br><br>vs.<br><br>Officer KYLE MESEBERG, individually and in his official capacity as an Officer with the Reno Police Department (RPD); Officer KELLY GANNON, individually and in his official capacity as an Officer with the RPD; Officer TIM BROADWAY, individually and in his official capacity as an Officer with the RPD; Officer JET UTTER, individually and in his official capacity as an Officer with the RPD; Officer ERIC SCHLESENER, individually and in his official capacity as an Officer with the RPD; CITY OF RENO by and through its POLICE DEPARTMENT, a political subdivision of the STATE OF NEVADA; John Does 1 through 15, inclusive; BLACK & WHITE CORPORATIONS 1 through 15, inclusive; inclusive; or RED AND WHITE MUNICIPAL ENTITIES 1 through 15, inclusive,<br><br>        Defendants.<br>_____/ | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

/ / /

/ / /

/ / /

/ / /

Plaintiff FAWN PHIBBS, by and through her counsel, MARC PICKER, ESQ., and ANGELA LIGHTNER, ESQ., OF MARC PICKER, ESQ., LTD., hereby alleges, complains and avers against Defendants, and each of them, as follows:

**JURISDICTION**

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1343 in that claims herein arise under the federal civil rights statutes, and pursuant to 28 U.S.C. § 1331, in that federal questions exist.  Supplemental jurisdiction exists over state law claims pursuant to 28 U.S.C. § 1331.  Venue is proper in this district and in this, the unofficial northern division of this district, because the Defendants are subject to personal jurisdiction here, and the claims arose here.

**NATURE OF CASE**

2. This is an action for damages and for attorney's fees and costs brought by FAWN PHIBBS, (hereinafter referred to as "Ms. PHIBBS"). Ms. PHIBBS alleges that the defendants, and each of them, being in violation of the Fourth and Fourteenth Amendments to the Constitution and laws of the United States of America, unlawfully and under color of authority, violated her rights by failing to protect Ms. PHIBBS from harm by failing to provide: adequate supervision and security, adequate staffing and staff training, appropriate policies and procedures to operate the transport wagon, and adequate medical care.

The acts committed against Ms. PHIBBS:

a. Violated the Fourth, Eighth and Fourteenth Amendments to the Constitution and laws of the United States of America;

b. Violated Title 42 U.S.C.A. § 1983; and

c. Were tortious under the laws of the State of Nevada and the common law.

Claims are stated for violation of the civil rights of the Plaintiff, for failure to protect Plaintiff from harm, for failure to provide safe environment, for inflicting cruel and unusual punishment upon Plaintiff, for the infliction of intentional emotional distress on the Plaintiff, and for the grossly negligent failure to attend to Plaintiff's medical needs in a timely

1 manner.

## STATEMENT OF CASE

### (Parties)

3. Plaintiff FAWN PHIBBS is, and at all relevant times related hereto was, a resident of Washoe County, Nevada.

4 Defendant Officer KYLE MESEBERG (hereinafter "MESEBERG"), is sued herein as an individual and in his official capacity as an Officer with the Reno Police Department (hereinafter "RPD"), and to Plaintiff's knowledge he was a resident of Washoe County, Nevada at all times relevant herein. In doing the acts alleged herein, he acted individually and as an Officer of RPD, located in Reno, Washoe County, Nevada, under color of state law.

5. Defendant Officer KELLY GANNON (hereinafter "GANNON"), is sued herein as an individual and in his official capacity as an Officer with the RPD, and to Plaintiff's knowledge he was a resident of Washoe County, Nevada at all times relevant herein. In doing the acts alleged herein, he acted individually and as an Officer of RPD, located in Reno, Washoe County, Nevada, under color of state law.

6. Defendant Officer TIM BROADWAY (hereinafter "BROADWAY"), is sued herein as an individual and in his official capacity as an Officer with the RPD, and to Plaintiff's knowledge he was a resident of Washoe County, Nevada at all times relevant herein. In doing the acts alleged herein, he acted individually and as an Officer of RPD, located in Reno, Washoe County, Nevada, under color of state law.

7. Defendant Officer JET UTTER (hereinafter "UTTER"), is sued herein as an individual and in his official capacity as an Officer with the RPD, and to Plaintiff's knowledge he was a resident of Washoe County, Nevada at all times relevant herein. In doing the acts alleged herein, he acted individually and as an Officer of RPD, located in Reno, Washoe County, Nevada, under color of state law.

8. Defendant Officer ERIC SCHLESENER (hereinafter "SCHLESENER"), is sued herein as an individual and in his official capacity as an Officer with the RPD, and to

1  Plaintiff's knowledge he was a resident of Washoe County, Nevada at all times relevant
2  herein. In doing the acts alleged herein, he acted individually and as an Officer of RPD,
3  located in Reno, Washoe County, Nevada, under color of state law.

4      9.    Defendant CITY OF RENO is a political subdivision of the STATE OF
5  NEVADA pursuant to Nevada Revised Statute and at all times relevant hereto, employed
6  the individual Defendants through its POLICE DEPARTMENT.

7      10.    Plaintiff does not know the true names and capacities or involvement,
8  whether individual, corporate, associate, partnership or otherwise of the Defendants named
9  herein as JOHN DOES 1 through 15, inclusive; BLACK & WHITE CORPORATIONS 1
10  through 15, inclusive; or RED AND WHITE MUNICIPAL ENTITIES 1 through 15, inclusive.
11  Plaintiff is informed and believe, and upon such information and belief allege, that each of
12  the Defendants designated herein as DOE, BLACK & WHITE CORPORATION or RED
13  AND WHITE MUNICIPAL ENTITIES is negligently or otherwise legally responsible in some
14  manner for the events and happenings referred to herein, and that each negligently or
15  otherwise caused injury or damages proximately suffered by the Plaintiff, as more
16  particularly alleged herein. Plaintiff prays leave to amend this Complaint to show their true
17  names and capacities when the same have been finally determined.

18      11.    At all times pertinent hereto, the named Defendants herein were acting by
19  and through its authorized employees, agents or other representatives, who were operating
20  within the course and scope of their representative capacity, and whose conduct has been
21  ratified by each said Defendant.

**(Facts of the Case)**

23      12.    On or about August 5, 2008, after receiving a report for a "welfare check",
24  Defendant RPD arrested Ms. PHIBBS for Domestic Battery, a misdemeanor, alleging she
25  had battered boyfriend, CARLOS RIANO.

26      13.    On or about August 5, 2008, Defendants knew or should have known Ms.
27  PHIBBS was taking prescribed medication for depression and that she threatened to use
28  a rope to hang herself from her balcony.

14. On or about August 5, 2008, Defendants were in possession of two (2) suicide notes which were written by Ms. PHIBBS approximately two weeks prior to the August 5, 2008, arrest.

15. On or about August 5, 2008, RIANO, in a written statement to Defendants, stated, "I received calls and text messages from Fawn about her trying to kill herself."

16. On or about March 6, 2009, Ms. PHIBBS called Defendant RPD and reported a domestic disturbance between herself and her boyfriend, RIANO.

17. Defendants UTTER, SCHLESENER and BROADWAY were informed that Ms. PHIBBS intentionally struck her head against the bathroom wall, causing injury to herself.

18. Defendants UTTER, SCHLESENER and BROADWAY reported that Ms. PHIBBS appeared highly intoxicated, was verbally abusive, and yelling. Ms. PHIBBS informed Defendant UTTER that she was taking Zoloft or Xanax.

19. Prior to transporting Ms. PHIBBS, Defendant BROADWAY ran a history report on Ms. PHIBBS and discovered her August 5, 2008, Domestic Battery arrest.

20. Prior to transporting Ms. PHIBBS, Defendant SCHLESENER noted that Ms. PHIBBS's behavior was "constantly up and down."

21. Prior to transporting Ms. PHIBBS, RIANO informed the Defendants that Ms. PHIBBS has a history of threatening to commit suicide and that she was depressed.

22. Ms. PHIBBS was placed in handcuffs and taken into custody by Defendants GANNON and MESEBERG, who then placed her into a Police Transport Vehicle (hereinafter "PTV"), aka "Paddy Wagon", or "Police Transport Wagon", at approximately 23:26:40 hours, and shut the doors.

23. Defendant GANNON then applied a seatbelt to Ms. PHIBBS.

24. Ms. PHIBBS was seated and belted into the second segregation area located on the driver's side of the vehicle. This segregation area contains a video camera. Her hands were handcuffed behind her.

///

25. Ms. PHIBBS's seat was square, approximately two-feet off the ground, and configured to seat two (2) prisoners side by side.

26. Unlike the first segregation area where the seatbelts are retractable and tighten on their own, Ms. PHIBB's seatbelt is a one piece strap, which goes from a cross shoulder harness down to a single seatbelt point near the waist, with a waist band returning back across her waist. This seatbelt is not self retracting and remains in whatever fixed position it has been adjusted to.

27. Defendants GANNON and MESEBERG failed to properly tighten the nonretractable seatbelt to restrain Ms. PHIBBS safely into her seat.

28. The Police Transport Wagon is equipped with a video screen, inside the cab portion of the vehicle where officers can monitor a detainee's status while they are transporting them to the jail. The video screen is mounted at visor level in between the two (2) sun-visors located in the cab portion of the vehicle. The video screen displays four (4) different pictures simultaneously and in black and white. Additionally, there is a 10-12 inch window which allows for a view of the container portion of the vehicle.

29. As she was transported in the Police Transport Wagon, Ms. PHIBBS was crying but not screaming or struggling with Defendants.

30. At approximately 23:28:00 hours, Defendant UTTER opened the door of the PTV, leaned in and told Ms. PHIBBS, "that's what you get for speaking to the fucking cops like that."

31. Defendant UTTER then whispered something to Ms. PHIBBS who became very upset and started kicking the walls and yelling obscenities at Defendant UTTER.

32. During transport, the video screen displayed Ms. PHIBBS in her segregation area.

33. As the nondriver, it was Defendant MESEBERG's duty to monitor the video screen.

34. At approximately 23:32:47 hours, Ms. PHIBSS, can be seen in the video monitor attempting to get the shoulder portion of the seatbelt around her neck.

1  35. She was successful in getting the seatbelt around her neck after <u>numerous</u>
2  attempts.

3  36. She then moved her body position around and dropped her legs down off of
4  the seat, and became unconscious, all of which was plainly visible to Defendants.

5  37. At approximately 23:41:00 hours Defendants MESEBERG and GANNON
6  began removing Ms. PHIBBS from her restraints. Ms. PHIBBS was found on her knees
7  with the seatbelt around her neck, and she appeared limp and unconscious.

8  38. After discovering Ms. PHIBBS was not breathing, Defendants MESEBERG
9  and GANNON called for an ambulance, but when she resumed breathing, said Defendants
10 radioed that no ambulance was needed.

11 39. Then, after Ms. PHIBBS began gasping for air and appeared to have trouble
12 breathing, Defendants MESEBERG and GANNON called for an ambulance a second
13 time.

14 40. At approximately 23:53:40 hours, a crew from the Reno Fire Department
15 rendered aid to Ms. PHIBBS.

16 41. On route to a medical hospital, Ms. PHIBBS suffered a seizure. She was
17 admitted into the Intensive Care Unit at RENOWN Regional Medical Center, placed on a
18 ventilator and was reported in critical condition.

19 42. On or about March 12, 2009, while still hospitalized, Ms. PHIBBS was treated
20 by Northern Nevada Adult Mental Health Services ("NNAMHS").

21 43. Ms. PHIBBS was released from RENOWN and NNAMHS in-patient care on
22 March 25, 2009.

23 44. To date, Ms. PHIBBS continues to receive psychiatric and emotional
24 counseling.

25 / / /
26 / / /
27 / / /
28 / / /

00000 45.  As a result of Defendants' gross negligence, their failure to protect Ms. Phibbs from harm and their failure to provide a safe environment, Ms. PHIBBS suffered brain injury from insufficient oxygen in tissue due to inadequate blood supply, has decreased brain function which interferes with her physical/emotional health and her ability to maintain steady employment, and she suffers from emotional and mental distress.

46.  Ms. PHIBBS has been required to retain the services of Marc Picker, Esq., Ltd., to prosecute this action and is entitled to reasonable attorney's fees and costs under 42 U.S.C. §1983.

**FIRST CLAIM FOR RELIEF**

(Violation of 42 U.S.C.A. § 1983)

(Failure to Provide Safe Environment)

47.  Ms. PHIBBS refers to paragraphs 2 through 46 herein and by this reference incorporate them herein as though they were set forth in full in this place.

48.  Ms. PHIBBS has a documented history of mental health issues and threats of suicide.

49.  Defendant RPD arrested Ms. PHIBBS approximately seven (7) months prior to the March 2008 incident and was on notice of her mental health issues and threats of suicide.

50.  Defendants, and each of them, had a duty to take reasonable precautionary measures to guarantee the safety of Ms. PHIBBS, a detainee.

51.  Defendants, at all times relevant, knew or should have known of Ms. PHIBBS mental health history and threats to commit suicide.

52.  Defendants knew or had reason to know that they had the ability and responsibility to control the conduct of Ms. PHIBBS, and knew or should have known of the necessity and opportunity for exercising such control.

/ / /

/ / /

/ / /

53. Defendants MESEBERG and GANNON had a duty to ensure that the nonretractable seatbelt was properly and securley placed upon Ms. PHIBBS to restrain Ms. PHIBBS from moving about the segregation cell, from falling out of her seat, and/or from potentially being harmed by the negligently secured seatbelt. Such was not a discretionary or tactical decision.

54. Defendants MESEBERG and GANNON had a duty to properly monitor the video screen to timely and reasonably detect harmful situations.

55. Defendants subjected Ms. PHIBBS to actual harm by allowing her to sit alone in her segregation cell with a non-retractable seatbelt that was negligently placed upon her. After taking her into their custody and control, Defendants were under a duty to exercise reasonable care to prevent Ms. PHIBBS from intentionally harming herself and/or from any harm caused by Defendants' grossly negligent acts.

56. Defendants subjected Ms. PHIBBS to actual harm by failing to properly monitor the video screen displaying her numerous attempts to wrap the negligently secured seatbelt around her neck. After taking her into their custody and control, Defendants were under a duty to exercise reasonable care to prevent Ms. PHIBBS from intentionally harming herself and/or from any harm caused by Defendants grossly negligent acts.

57. Defendants' actions created a unreasonable risk of harm to Ms. PHIBBS.

58. Ms. PHIBBS was in the custody and control of RPD and under the supervision of Defendants, and each of them, when she suffered severe physical and emotional harm.

59. Ms. PHIBBS was in the custody and care of Defendants when she repeatedly attempted to wrap a negligently secured seatbelt around her neck and then succeeded in hanging herself with said seatbelt. Defendants acted in total disregard for Ms. PHIBBS's safety.

60. By placing Ms. PHIBBS in a position to be physically harmed, Defendants violated the civil rights of Ms. PHIBBS under the Fourth and Fourteenth Amendments of the United States Constitution. The Defendants thereby subjected themselves to liability

1  under the provisions of 42 U.S.C. § 1983 to Ms. PHIBBS.

2      61.    As a direct and proximate result of the conduct of the Defendants, Ms. PHIBBS suffered nominal and actual damages, general damages, including severe emotional and mental pain and suffering, physical pain and suffering, and special damages, all in the sums exceeding $100,000.00 in amount.

## SECOND CLAIM FOR RELIEF

(Violation of 42 U.S.C.A. § 1983)

(Deliberate Indifference - Safety)

62.    Ms. PHIBBS refers to paragraphs 2 through 61 herein and by this reference incorporate them herein as though they were set forth in full in this place.

63.    Defendants knowingly made, modified and carried out policies of RPD regarding the placement of a known detainee with a history of mental illness and suicide threats in the PTV.

64.    At all times material hereto, Defendants negligently and/or deliberately failed to properly protect Ms. PHIBBS.

65.    Defendants knew, should have known, or could readily have ascertained that Ms. PHIBBS had a history of mental illness and/or suicide threats based on her arrest in August 2008, her behavior on March 6, 2009, RIANO's report that Ms. PHIBBS intentionally struck her own head against the bathroom wall, and RIANO's report that Ms. PHIBBS was depressed and had made suicide threats in the past.

66.    Defendants, acting with deliberate indifference to the rights of Ms. PHIBBS aforementioned, failed to adequately train and supervise its employees, so as to avoid constitutional violations such as those suffered by Ms. PHIBBS as alleged herein, subjecting said Defendants to liability under 42 U.S.C. § 1983.

67.    Ms. PHIBBS is entitled to declaratory judgment to this effect and is further entitled to permanent injunctive relief in the form of an injunction enjoining RPD to initiate proper training of its employees in detaining and restraining mentally ill, intoxicated and hostile detainees in the PTV.

68.     Having thus allowed Ms. PHIBBS to suffer physical and mental harm as described hereinbefore, all Defendants subjected themselves to liability under the provisions of 42 U.S.C. § 1983 to Ms. PHIBBS for subjecting her to the foreseeable risk of, and, as it turned out, the actual occurrence of, unlawful and, damaging harm against her.

69.     As a direct and proximate result of the conduct of the Defendants, Ms. PHIBBS suffered nominal and actual damages, general damages, including severe emotional and mental pain and suffering, physical pain and suffering, and special damages, all in the sums exceeding $100,000.00 in amount.

**THIRD CLAIM FOR RELIEF**

(Violation of 42 U.S.C.A. §1983)

(Deliberate Indifference - Custom and Policy)

70.     Ms. PHIBBS refers to paragraphs 2 through 69 herein, and by this reference, incorporates them herein as though they were set forth in this place.

71.     Defendants, and each of them, failed to provide proper care and safety for Ms. PHIBBS.

72.     Defendants, and each of them, were deliberately indifferent to Ms. PHIBBS's medical needs and safety resulting from their failure to implement and/or address deficiencies in their existing practice regarding the safe detaining and securing of mentally ill, intoxicated, or hostile detainees in the PTV.

73.     Defendants ignored serious and apparent risks to Ms. PHIBBS's constitutional rights by failing to institute policies addressing the deficiencies in their existing practice regarding the safe detaining and securing of mentally ill, intoxicated and hostile detainees in the PTV.

74.     Defendants deliberate indifference, as described above, resulting from their failure to implement and/or address deficiencies in their existing practice regarding the safe detaining and securing of mentally ill, intoxicated and hostile detainees in the PTV caused the harm suffered by Ms. PHIBBS in violation of her rights under the Eighth and Fourteenth

1  Amendments.

2  75. As a direct and proximate result of the Defendants' deliberate indifference, Ms. PHIBBS suffered severe physical and emotional harm, and is entitled to compensation for the aforementioned damages, and the Defendants, and each of them, have subjected themselves to liability for those damages pursuant to the United States Constitution, common law and the statutory laws of the State of Nevada.

76. As a direct and proximate result of the conduct of the Defendants, Ms. PHIBBS suffered nominal and actual damages, general damages, including severe emotional and mental pain and suffering, physical pain and suffering, and special damages, all in the sums exceeding $100,000.00 in amount.

## FOURTH CLAIM FOR RELIEF

(Violation of 42 U.S.C.A. 1983)

(Deliberate Indifference - Custom and Policy)

77. Ms. PHIBBS refers to paragraphs 2 through 76 herein and by this reference incorporates them herein as though they were set forth in full in this place.

78. Defendants, and each of them, negligently and deliberately failed to provide proper care and safety for Ms. PHIBBS.

79. Defendants, and each of them, were deliberately indifferent to Ms. PHIBBS medical needs and safety resulting from their failure to implement and/or address deficiencies in their existing practice regarding the background checks on individuals for mental illness or suicide threats prior to arresting and transporting said individuals.

80. Defendants ignored serious and apparent risks to Ms. PHIBBS's constitutional rights by failing to institute policies addressing the deficiencies in their existing practice regarding the background checks on individuals for mental illness or suicide threats prior to arresting and transporting said individual.

/ / /

/ / /

/ / /

81. Defendants deliberate indifference, as described above, resulting from its failure to implement and/or address deficiencies in their existing practice regarding the background checks on individuals for mental illness or suicide threats prior to arresting and transporting said individual, caused the harm suffered by Ms. PHIBBS in violation of her rights under the Eighth and Fourteenth Amendments.

82. As a direct and proximate result of the Defendants' deliberate indifference, Ms. PHIBBS has suffered physical and mental pain and is entitled to compensation for the aforementioned damages, and the Defendants, and each of them, have subjected themselves to liability for those damages pursuant to the United States Constitution, the common law and the statutory laws of the State of Nevada.

83. As a direct and proximate result of the conduct of the Defendants, Ms. PHIBBS suffered nominal and actual damages, general damages, including severe emotional and mental pain and suffering, physical pain and suffering, and special damages, all in the sums exceeding $100,000.00 in amount.

**FIFTH CLAIM FOR RELIEF**

(Grossly Negligent Training, Supervising and Retaining)

84. Ms. PHIBBS refers to paragraphs 2 through 83 herein and by this reference incorporate them herein as though they were set forth in full in this place.

85. In their respective roles as employers and supervisors of personnel, Defendants, and each of them, had a duty to insure that their employees would conduct themselves on the job in a manner that was not adverse, inimical, or damaging to the safety and welfare of the detainees with whom they come in contact.

86. Transporting Ms. PHIBBS by PTV on March 6 2008, was Defendant Gannon's fifth transport of a detainee, and he had only recently been trained to transport detainees using the PTV.

/ / /

/ / /

/ / /

87. By failing to properly train Defendants MESEBERG and GANNON in restraining a detainee with a nonretractable seatbelt, as described hereinbefore, and by failing to properly supervise Defendants MESEBERG and GANNON in restraining Ms. PHIBBS, Defendants, and each of them, breached that duty to Ms. PHIBBS thereby proximately and actually causing the damages that are described herein.

88. By failing to properly train Defendants MESEBERG and GANNON in monitoring mentally ill, intoxicated, or hostile detainees while transporting such detainees, as described hereinbefore, and by failing to properly supervise Defendants MESEBERG and GANNON in monitoring such detainees, Defendants, and each of them, breached that duty to Ms. PHIBBS thereby proximately and actually causing the damages that are described herein.

89. Defendants, and each of them, acting with deliberate indifference to the health and rights of Ms. PHIBBS aforementioned, failed to adequately train and supervise its employees, so as to avoid constitutional violations such as those suffered by Ms. PHIBBS as alleged herein, subjecting said Defendants to liability under 42 U.S.C. § 1983.

90. In doing the acts mentioned above, the Defendants' subjected themselves to liability to Ms. PHIBBS under the common law and statutory laws of the State of Nevada relating to gross negligence.

91. As a direct and proximate result of the conduct of the Defendants, Ms. PHIBBS suffered nominal and actual damages, general damages, including severe emotional and mental pain and suffering, physical pain and suffering, and special damages, all in the sums exceeding $100,000.00 in amount.

### SIXTH CLAIM FOR RELIEF

(Grossly Negligent Training, Supervising and Retaining)

92. Ms. PHIBBS refers to paragraphs 2 through 91 herein and by this reference incorporate them herein as though they were set forth in full in this place.

/ / /

/ / /

93. In their respective roles as employers and supervisors of personnel, Defendants, and each of them, had a duty to insure that their employees would conduct themselves on the job in a manner that was not adverse, inimical, or damaging to the safety and welfare of the detainees with whom they come in contact.

94. By failing to properly train Defendants UTTER, SCHLESENER and BROADWAY in establishing whether a detainee has a history of mental illness and/or suicidal tendencies, and by failing to properly supervise Defendants UTTER, SCHLESENER and BROADWAY in establishing whether a detainee has a history of mental illness and/or suicidal tendencies, Defendants, and each of them, breached that duty to Ms. PHIBBS thereby proximately and actually causing the damages that are

95. By failing to properly train Defendants UTTER, SCHLESENER and BROADWAY in accessing and handling intoxicated and hostile detainees with a known history of mental illness and suicide threats, as described hereinbefore, and by failing to properly supervise Defendants UTTER, SCHLESENER and BROADWAY in accessing and handling such detainees, Defendants, and each of them, breached that duty to Ms. PHIBBS thereby proximately and actually causing the damages that are described herein.

96. By failing to properly train Defendant UTTER in refraining from aggravating an intoxicated and hostile detainee, especially a detainee with a known history of mental illness and suicide threats, as described hereinbefore, and by failing to properly supervise Defendant UTTER in handling such detainees, Defendants, and each of them, breached that duty to Ms. PHIBBS thereby proximately and actually causing the damages that are described herein.

97. Defendants, and each of them, acting with deliberate indifference to the health and rights of Ms. PHIBBS aforementioned, failed to adequately train and supervise its employees, so as to avoid constitutional violations such as those suffered by Ms. PHIBBS as alleged herein, subjecting said Defendants to liability under 42 U.S.C. § 1983.

/ / /

/ / /

98. In doing the acts mentioned above, the Defendants' subjected themselves to liability to Ms. PHIBBS under the common law and statutory laws of the State of Nevada relating to gross negligence.

99. As a direct and proximate result of the conduct of the Defendants, Ms. PHIBBS suffered nominal and actual damages, general damages, including severe emotional and mental pain and suffering, physical pain and suffering, and special damages, all in the sums exceeding $100,000.00 in amount.

## SEVENTH CLAIM FOR RELIEF

(Breach of Duty of Due Care)

100. Ms. PHIBBS refers to paragraphs 2 through 99 herein and by this reference incorporate them herein as though they were set forth in full in this place.

101. Defendants, and each of them, had a duty to take reasonable precautionary measures to guarantee the safety of Ms. PHIBBS, a detainee.

102. Defendants, and each of them, had a duty to exercise reasonable care so as to avoid foreseeable harm to Ms. PHIBBS and, in doing the acts mentioned hereinabove, breached that duty.

103. As set forth in the above causes of actions, Defendants breached their duties to Ms. PHIBBS.

104. Defendants, and each of them, acted recklessly or were grossly negligent in performing their official duties in that they failed to use such reasonable care in the performance of their duties as reasonably prudent and careful persons in such positions would have done under the circumstances and were careless, reckless and grossly negligent in their failure to take reasonable precautionary measures to guarantee the safety of Ms. PHIBBS, a detainee, as described more fully throughout this Complaint.

105. As a direct and proximate result of Defendants' reckless or gross negligence, Ms. PHIBBS suffered physical pain and emotional distress and is entitled to compensation for the aforementioned damages, and Defendants have subjected themselves to liability for those damages pursuant to the common law and the statutory law of the State of

1  Nevada.

2  106.   As a direct and proximate result of the conduct of the Defendants, Ms.
3  PHIBBS suffered nominal and actual damages, general damages, including severe
4  emotional and mental pain and suffering, physical pain and suffering, and special
5  damages, all in the sums exceeding $100,000.00 in amount.

6  **EIGHTH CLAIM FOR RELIEF**

7  (Punitive Damage Claim)

8  107.   Ms. PHIBBS refers to paragraphs 2 through 106 herein and by this reference
9  incorporate them herein as though they were set forth in full in this place.

10  108.   The egregious and outrageous conduct of Defendants, and each of them,
11  was done with deliberate indifference to and callous disregard for the constitutional rights
12  of Ms. PHIBBS, with malice and evil motive, entitling her to an award of punitive and
13  exemplary damages in an amount in excess of $100,000.00.

14  **PRAYER**

15  **WHEREFORE**, Plaintiff prays to this Court for the following relief:

16  1.   For an award of nominal damages;
17  2.   For an award of general damages in a sum exceeding $100,000.00;
18  3.   For an award of special damages in a sum exceeding $100,000.00;
19  4.   For an award of punitive damages in a sum exceeding $100,000.00;
20  5.   For declaratory and injunctive relief as prayed for hereinabove;
21  6.   For an award of reasonable attorney's fees and costs of suit; and
22  7.   For such other and further relief as the Court deems just and proper.
23  / / /
24  / / /
25  / / /
26  / / /
27  / / /
28  / / /

**DEMAND FOR JURY TRIAL**

YOU, AND EACH OF YOU, WILL PLEASE TAKE NOTICE that Plaintiff FAWN PHIBBS hereby demands a trial by jury of all the issues in the above-entitled matter.

DATED this 4th day of March, 2011.

                                          MARC PICKER, ESQ., LTD.

                                          /s/ Marc Picker
                                          MARC PICKER, ESQ.

                                          MARC PICKER, ESQ., LTD.

                                          /s/ Angela Lightner
                                          ANGELA LIGHTNER, ESQ.